# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL,
　　　　　　Petitioner,

　　　　v.

CHOUDHURY SALEKIN,
　　　　　　Respondent.

DOCKET NUMBER
CB-1216-18-0004-T-1

DATE: May 6, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Kelly Resendes</u>, Esquire, Washington, D.C., for the petitioner.

<u>Stan Davis</u>, Esquire, Brentwood, Tennessee, for the respondent.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The respondent has filed a petition for review of the initial decision, in which the administrative law judge found that he violated the Hatch Act and ordered that he be fined $1,000.00 and debarred from Federal service for 5 years. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative law judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

Pursuant to 5 U.S.C. §§ 1212(a)(5), 1215(a)(1)(B), and 1216(c), and 5 C.F.R. § 734.102, the Office of Special Counsel (OSC) filed a complaint against the respondent, who served as a physician with the Department of Veterans Affairs (DVA), alleging 15 counts of violating the Hatch Act concerning his 2014 candidacy for the office of United States Senator from Tennessee. Initial Appeal File (IAF), Tab 1 at 9-14. In the first count, OSC alleged that the respondent was a candidate for election to a partisan political office[2] in violation of 5 U.S.C. § 7323(a)(3) and 5 C.F.R. § 734.304. *Id.* at 9-10. In counts 2-6, OSC alleged that the respondent used his official authority or influence for the purpose of interfering with or affecting the result of an election in violation of 5 U.S.C. § 7323(a)(1) and 5 C.F.R. § 734.302. *Id.* at 10-11. In counts 7-10, OSC alleged that the respondent knowingly solicited, accepted, or received political contributions in violation of 5 U.S.C. § 7323(a)(2) and 5 C.F.R. § 734.303. *Id.*

---

[2] Pursuant to 5 U.S.C. § 7322(2), "partisan political office" is defined as "any office for which any candidate is nominated or elected as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected."

at 11-12. Lastly, OSC alleged in counts 11-15 that the respondent engaged in political activity while on duty and/or in a room or building occupied in the discharge of his official duties in violation of 5 U.S.C. § 7324(a) and 5 C.F.R. § 734.306. *Id.* at 12-14.

In his amended answer to the complaint, the respondent denied 8 counts, numbers 1-5 and 11-13. IAF, Tab 7 at 2-5, 7-8. He admitted to the conduct alleged in 4 of the counts, numbers 7-10, but he denied that the conduct alleged in counts 7 and 8 was willful, and contended that the conduct alleged in counts 9 and 10 did not constitute a violation of the Hatch Act. *Id.* at 5-7. Concerning counts 6 and 14-15, the respondent neither admitted nor denied OSC's allegations. *Id.* at 8-9. Regarding counts 5, 6, 11, and 13, the respondent challenged the evidence as hearsay. *Id.* at 5, 7-8. He claimed that he was unaware that the Hatch Act prohibited his conduct and asserted that once he became aware of the prohibition, he unsuccessfully tried to withdraw his candidacy. *Id.* at 2, 10-11.

After holding a hearing, the administrative law judge sustained 11 of the 15 counts in OSC's complaint, declining to sustain counts 5-6 and 11-12, and he ordered that the respondent be fined $1,000.00 and debarred from Federal service for 5 years. IAF, Tab 61, Initial Decision (ID). The administrative law judge found that OSC proved the first count, establishing that the respondent was a Federal employee covered by the Hatch Act, and that he was a candidate for election to a partisan political office in violation of 5 U.S.C. § 7323(a)(3). ID at 9. He found that OSC proved 3 out of the 5 counts, numbers 2-4, in which it alleged that the respondent used his official authority and influence for the purpose of interfering with or affecting the result of an election in violation of 5 U.S.C. § 7323(a)(1). ID at 9-20. The administrative law judge also found that OSC proved all 4 of the counts, numbers 7-10, charging that the respondent

knowingly solicited, accepted, and[3] received political contributions in violation of 5 U.S.C. § 7323(a)(2). ID at 20-24. Lastly, he sustained 3 of the 5 counts, numbers 13-15, in which OSC alleged that the respondent engaged in political activity while in a building occupied in the discharge of his official duties in violation of 5 U.S.C. § 7324(a). ID at 24-30. The administrative law judge then performed an extensive penalty analysis, ultimately determining that a $1,000.00 fine and a debarment from Federal service for 5 years was the appropriate penalty for the respondent's violations of the Hatch Act. ID at 30-41.

In his petition for review, the respondent argues that the administrative law judge erred in finding that he knowingly and willfully violated the Hatch Act. Petition for Review (PFR) File, Tab 1 at 1. He also challenges several aspects of the administrative law judge's penalty analysis. *Id.* at 2-5. OSC has filed a response to the respondent's petition for review, and the respondent has filed a reply to OSC's response. PFR File, Tabs 3-4. OSC subsequently filed a motion to strike the respondent's reply as untimely filed and because it raised new allegations of error not raised in his petition for review.[4] PFR File, Tab 5.

---

[3] The administrative law judge found that OSC proved a violation of 5 U.S.C. § 7323(a)(2), which, according to the administrative law judge, prohibits knowingly soliciting, accepting, and receiving political contributions. ID at 20-24. The statute, however, uses the word "or," not the word "and." 5 U.S.C. § 7323(a)(2). The respondent does not challenge this finding on review and, to the extent that the administrative law judge erred in iterating the statutory language, his analysis is otherwise clear that the respondent violated the statute. Thus, the administrative law judge's error did not prejudice the parties and is not a basis to disturb the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

[4] OSC moved to strike the respondent's reply because it was untimely filed and because he did not raise the arguments therein, challenging the administrative law judge's findings with respect to counts 2-6, which concerned using his official influence, and counts 7-10, which concerned political contributions, in his petition for review. PFR File, Tab 4 at 2-4, Tab 5 at 9. The respondent asserted for the first time in his reply that the administrative law judge failed to consider as mitigating factors his altruistic motives in running for the Senate and his willingness to take a reduction in salary if elected to the Senate. PFR File, Tab 4 at 3-4, Tab 5 at 9. OSC is correct that the

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative law judge correctly found that OSC proved that the respondent violated the Hatch Act</u>.

As discussed above, in its first count, OSC alleged that the respondent violated 5 U.S.C. § 7323(a)(3) through his candidacy for partisan political office. IAF, Tab 1 at 9-10. That statute makes it unlawful for an employee, such as the appellant, to "run for the nomination or as a candidate for election to a partisan political office."[5] 5 U.S.C. § 7323(a)(3). Based on the record before us, we agree with the administrative law judge that OSC established the first count because the record shows that the respondent was a Federal employee covered by the Hatch Act, and was a candidate for partisan political office in the 2014 election for United States Senator from Tennessee. ID at 9. The respondent does not contest these findings on review and instead contends that, because he was unaware that the Hatch Act prohibited his candidacy, he did not knowingly or willfully violate the Hatch Act when he ran for the Senate. PFR File, Tab 1 at 1. However, the

---

respondent did not make these claims in his petition for review. *Compare*, PFR File, Tab 1 at 1-4, *with* PFR File, Tab 4 at 2-4. For example, the respondent argues for the first time in his reply that he paid for the business cards at issue himself, and challenges the finding that he coerced a patient into participating in a campaign video and the finding that DVA sent him an email regarding the Hatch Act. PFR File, Tab 4 at 2-4. To the extent that the respondent raises issues in his reply that OSC did not raise in its response to his petition for review, a reply is limited to the issues raised by another party in the response to the petition for review, 5 C.F.R. § 1201.114(a)(4). It may not raise new allegations of error. *Id.* Accordingly, we will not consider the appellant's new arguments, first raised in his reply. *See Boston v. Department of the Army*, 122 M.S.P.R. 577, ¶ 5 n .3 (2015) (declining to consider new arguments that were first raised in a reply brief); *Special Counsel v. Kehoe*, 46 M.S.P.R. 112, 117-18 (1990) (observing the well-established Federal appellate rule that a party cannot raise new issues in a reply). Moreover, the respondent's arguments largely repeat the unsuccessful arguments he made below, and they do not show that the administrative law judge erred in finding that OSC proved 11 out of the 15 Hatch Act violations set forth in its complaint. PFR File, Tab 4 at 2-4; ID at 9-30. Thus, we need not consider the timeliness of the respondent's reply.

[5] The regulatory language cited by OSC in its complaint, 5 C.F.R. § 734.304, tracks the statutory language, with an exception not relevant here, stating that "[a]n employee may not run for the nomination or as a candidate for election to partisan political office."

respondent's professed ignorance of the prohibition of his candidacy does not excuse his misconduct because the plain language of the statute does not require OSC to prove that a violation was either knowing or willful. 5 U.S.C. § 7323(a)(3); *Lewis v. Merit Systems Protection Board*, 594 F. App'x 974, 979 (Fed. Cir. 2014) (observing that the prohibition in 5 U.S.C. § 7323(a)(2) does not require knowledge or intent).[6]

In counts 2-4, OSC alleged that the respondent violated 5 U.S.C. § 7323(a)(1). IAF, Tab 1 at 10-11. That statute prohibits an employee, such as the respondent, from using "his official authority or influence for the purpose of interfering with or affecting the result of an election."[7] 5 U.S.C. § 7323(a)(1). In sustaining counts 2-4, the administrative law judge found, respectively, that the respondent used his official title and the DVA seal on his campaign business cards, discussed his DVA employment on his campaign website, and influenced a patient to participate in his campaign video. ID at 9-14. The respondent does not challenge this finding on review, and we discern no reason to disturb it. The administrative law judge determined that OSC did not prove counts 5-6, which also alleged that the respondent violated 5 U.S.C. § 7323(a)(1) by, respectively, providing information on how to view his campaign video to a patient during a medical consultation, and informing a patient about a campaign event, finding after lengthy analysis that OSC based these counts on unreliable hearsay. ID at 14-20.

---

[6] *See Morris v. Department of the Navy*, 123 M.S.P.R. 662, ¶ 13 n.9 (2016) (explaining that the Board may follow a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit when it finds its reasoning persuasive).

[7] The regulatory provision cited by OSC in support of counts 2-4, 5 C.F.R. § 734.302, tracks the statutory language, stating that "[a]n employee may not use his or her official authority or influence for the purpose of interfering with or affecting the result of an election." 5 C.F.R. § 734.302(a). The regulation give examples of prohibited conduct, such as an employee using his official title while participating in political activity, using his authority to coerce political activity, and soliciting, accepting, or receiving volunteer services from a subordinate for political purpose. 5 C.F.R. § 734.302(b).

In counts 7-10, OSC alleged that the respondent violated 5 U.S.C. § 7323(a)(2). IAF, Tab 1 at 11-12. That statute prohibits an employee, such as the respondent, from knowingly soliciting, accepting, or receiving political contributions.[8] 5 U.S.C. § 7323(a)(2). This provision of the statute has an explicit knowledge requirement, but, as the administrative law judge correctly observed, OSC must only establish that the respondent knowingly accepted a political contribution, and his awareness of the Hatch Act is therefore not an element of the charge. ID at 20-21; 5 U.S.C. § 7323(a)(2); *Lewis*, 594 F. App'x at 979-80 (observing that the statute does not require knowledge that soliciting the donation violated the law). The administrative law judge found that OSC established counts 7-10, finding that the respondent knowingly solicited, accepted, and received political contributions. ID at 20-24. The respondent does not challenge this finding on review, and we discern no reason to disturb it.

Lastly, in counts 11-15, OSC alleged that the respondent violated 5 U.S.C. § 7324(a). IAF, Tab 1 at 12-14. That statute prohibits an employee, such as the respondent, from engaging in political activity, in pertinent part, while on duty or in a room or building occupied in the discharge of official duties.[9] 5 U.S.C. § 7324(a)(1), (2). The administrative law judge sustained counts 13-15, finding that the respondent, respectively, told a DVA employee about his candidacy and website while in the workplace, asked a nurse to be in his campaign video, and asked another employee to view his campaign video. ID at 27-30. The respondent does not challenge these findings in his petition for review, and we discern no reason to disturb them. The administrative law judge found that OSC

---

[8] The regulatory provision cited by OSC in support of counts 7-10, 5 C.F.R. § 734.303, tracks the statutory language, providing, among other things, that an employee may not knowingly solicit, accept, or receive political contributions.

[9] The regulatory provision cited by OSC in support of counts 11-15, 5 C.F.R. § 734.306, tracks the statutory language, providing, among other things, that an employee may not participate in political activities while on duty or while in a room or building occupied in the discharge of official duties.

did not prove counts 11 and 12, once again finding that its case in support of those counts rested on unreliable hearsay.  ID at 25-26.

<u>The appropriate penalty for the respondent's Hatch Act violations is a $1,000 fine and debarment from Federal service for 5 years.</u>

In considering the penalty for the sustained violations of the Hatch Act, the administrative law judge correctly found that the nonexhaustive list of factors for considering the penalty in a chapter 75 action set forth by the Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), were applicable.  ID at 30; *Special Counsel v. Lewis*, 121 M.S.P.R. 109, ¶ 23 (finding that under the Hatch Act Modernization Act of 2012, the Board should apply the *Douglas* factors in determining the proper penalty for violations of the Hatch Act), *aff'd*, 594 F. App'x 974 (Fed. Cir. 2014).  The respondent disagrees with the administrative law judge's application of *Lewis*, 121 M.S.P.R. 109, and *Special Counsel v. Murry*, MSPB Docket No. CB-1216-15-0002-T-1 (Final Order, Nov. 3, 2015),[10] to his appeal, arguing that the "time, place, and circumstances" of those cases are distinguishable from his situation, but he does not explain why the *Douglas* factors are not applicable to his case.  PFR, Tab 1 at 3; ID at 34-35. *Lewis*, like the instant matter, was adjudicated under the Hatch Act Modernization Act of 2012, and is therefore directly applicable here.  *Lewis*, 121 M.S.P.R. 109, ¶ 18; ID at 34-35.  It involved a covered employee who, like the respondent, was a candidate for partisan political office, and explains that, for a covered employee, being a candidate for a partisan political office warrants removal. *Lewis*, 121 M.S.P.R. 109, ¶¶ 15, 27-31.  The fact that Mr. Lewis did so twice, and

---

[10] *Murry* is a nonprecedential decision, and such decisions have no precedential value. 5 C.F.R. § 1201.117(c)(2).  Thus, the administrative law judge erred in citing it.  *Id.*; ID at 35.  Nevertheless, because he properly cited other pertinent authority in support of his point that Hatch Act violations are serious offenses, ID at 35, this did not prejudice the respondent's substantive rights, *see Panter*, 22 M.S.P.R. at 282 (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

was removed from his position as a sanction for doing so, does not significantly distinguish it from the instant matter, in which the respondent only ran for partisan political office once, and, as noted, unsuccessfully tried to withdraw his candidacy after being told that it violated the Hatch Act, especially considering the lack of ordinary care that the administrative law judge found regarding the respondent's knowledge of the Hatch Act. ID at 37. Moreover, the respondent is no longer employed by DVA, ID at 40, so the penalty of removal imposed in *Lewis* is not available in the instant matter.

The respondent challenges the administrative law judge's analysis of several of the *Douglas* factors, first and foremost his lack of knowledge that his candidacy was prohibited under the Hatch Act. PFR File, Tab 1 at 1-4. He argues that the administrative law judge improperly concluded that he should have known about the law prohibiting his candidacy for the United States Senate on the basis of the administrative law judge's subjective opinion of his educational qualifications and intellectual level. *Id.* at 1. The respondent also contends that OSC failed to show that he received a 2012 DVA email concerning the Hatch Act and that DVA training concerning the Hatch Act did not regularly happen until after he had filed as a candidate for election to the Senate. *Id.* at 1-2.

The administrative law judge correctly found that knowledge is pertinent to the penalty analysis because it addresses the *Douglas* factor regarding the clarity with which the respondent was on notice of the rules he violated in committing the misconduct in question, or had been warned about it. ID at 36-39. The administrative law judge found that DVA employees have received Hatch Act information during new employee orientation since 1993, which is before the respondent began his employment with DVA in 1994, as well as during each Federal election cycle, and that DVA maintained a Hatch Act frequently-asked-questions page on the medical center's website since 2010. ID

at 5. He also found that DVA sent emails to all its employees regarding the Hatch Act in 2012 and 2014 and that the respondent received them. *Id.*; IAF, Tab 30 at 131-32, 210-13, Tab 34 at 7-9. Notably, the respondent testified that he did not open the 2012 email, because he "was not required to open it," and he asserted that "if I thought it was important to read, I would read [it]," Hearing Transcript, Sept. 20, 2018, at 102, 111 (testimony of the respondent).

The administrative law judge determined that the respondent's professed lack of knowledge was therefore attributable to a lack of ordinary care. ID at 37; *see Special Counsel v. Blackburne*, 58 M.S.P.R. 279, 284 (1993) (observing the Board has held that, when information about the Hatch Act is readily available, ignorance of its full scope is attributable to a lack of ordinary care). Because these findings illustrate that information about the Hatch Act was readily available to the respondent, the Board has found that knowledge of the Hatch Act is properly imputed to him. *Blackburne*, 58 M.S.P.R. at 284. Moreover, the record shows that the respondent replied to the October 1, 2014 email from his supervisor with an assertion that he was aware of the Hatch Act. ID at 38-39; IAF, Tab 30 at 274. Thus, we agree with the administrative law judge that, because information about the Hatch Act was readily available to the respondent, knowledge of the act is imputed to him, and that his knowledge of the Hatch Act supports a more severe penalty. ID at 39.

The respondent also argues that the administrative law judge wrongfully found that his candidacy impacted the performance of his duties and improperly used that finding as an aggravating factor in his penalty analysis. PFR File, Tab 1 at 2. In analyzing this *Douglas* factor, which concerns the effect of the offense on the respondent's performance and on his supervisor's confidence in his ability to perform his assigned duties, *Douglas*, 5 M.S.P.R. at 305, the administrative law judge noted that the respondent had engaged in political activity inside his workplace, ID at 34. The administrative law judge found that OSC proved that

the respondent had done so with other DVA employees three times. ID at 27-30. Observing that the respondent's supervisor had spoken to the respondent about his performance not being at an acceptable level during the time he was a candidate, the administrative law judge found that the respondent's duties were likely impacted by his candidacy, which, in turn, led to a loss of confidence by his supervisor, and militates toward a slightly more severe penalty. ID at 34. On review, the respondent argues that that there was no objective evidence of an impact, in that he was not absent from work and did not make clinical errors or see fewer patients as a consequence of his candidacy. PFR File, Tab 1 at 2. He also argues that his supervisor was not from the same field of medicine as he was, and was instead an administrative supervisor, limiting his ability to comment on the respondent's clinical productivity. *Id.* We are not persuaded. Even if there was no objective evidence, the fact remains that the respondent's supervisor received complaints that the respondent had engaged in political activity in the workplace, which OSC proved in counts 13-15. ID at 5, 27-30. Those complaints, combined with the supervisor's belief that the respondent's performance had slipped, could easily cause the supervisor to lose confidence in the respondent's ability to perform his assigned duties, especially if those assigned duties were to conflict with the respondent's political aims. Thus, we agree with the administrative law judge that this factor militates slightly toward a more severe sanction. ID at 34.

The respondent also contends that the administrative law judge failed to consider the fact that he unsuccessfully tried to discontinue his candidacy on the same day that DVA's regional counsel notified him that it violated the Hatch Act. PFR File, Tab 1 at 3-4. Contrary to the respondent's contention, the administrative law judge noted several times that, sometime after October 1, 2014, the respondent had stopped all campaign activity, and contacted the Federal Election Commission to withdraw his candidacy. ID at 5, 36-38. The

administrative law judge considered this fact in the context of the clarity with which the respondent was on notice of the rules he violated, or had been warned about the conduct at issue. ID at 36-39; *Douglas*, 5 M.S.P.R. at 305.

Lastly, the respondent argues that, because the administrative law judge imposed the same penalty that OSC requested, the penalty failed to reflect the mitigating factors discussed in the initial decision. PFR File, Tab 1 at 4. The administrative law judge found that the respondent's work record supported mitigation, as did his cessation of campaign activities and attempt to withdraw his candidacy. ID at 33, 40. However, the administrative law judge also found that because the respondent's cessation and attempted withdrawal of his candidacy happened after his supervisor contacted him about the violations, it was not a substantial mitigating factor. ID at 40. Ultimately, the administrative law judge's detailed *Douglas* analysis, in which he discussed each of the 12 *Douglas* factors, finds more aggravating factors present than mitigating ones. ID at 31-40. We agree with the administrative law judge that factors such as the nature of the respondent's professional responsibilities, prominence as a supervisor, contacts with the public, and the effect on his supervisor's confidence outweigh the mitigating factors of his good work record and somewhat voluntary cessation of his candidacy. *Id.*

Accordingly, applying the administrative law judge's factual findings to our independent consideration of the appropriate penalty for the respondent's Hatch Act violations under *Douglas,* we ORDER that the respondent be fined $1,000 and debarred from Federal service for 5 years.

## ORDER

The Board ORDERS that the respondent be fined $1,000 and debarred from Federal service for 5 years. The Board also ORDERS OSC to notify the Board within 30 days of the date of this Final Order whether the fine has been paid and

the respondent debarred. This is the final decision of the Merit Systems Protection Board in this appeal. 5 C.F.R. § 1201.113(b).

## NOTICE OF APPEAL RIGHTS[11]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board  appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised

claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and  appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.